IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BONNIE JENKINS,                     )
                                    )
        Plaintiff,                  )
                                    )    Civil No. 05-628-AA
    vs.                             )    OPINION AND ORDER
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )
_____)

Rory Linerud
Linerud Law Firm
PO Box 1105
Salem, Oregon 97205
    Attorney for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Craig Casey
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Franco L. Becia
Special Assistant U.S. Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for defendant

AIKEN, Judge:

Claimant, Bonnie Jenkins, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied claimant's application for Supplemental Security Income (SSI) disability benefits under Title XVI. For the reasons set forth below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Jenkins protectively filed her application for SSI benefits on February 12, 2001. Tr. 75. She alleged disability, commencing January 2001, due to urinary incontinence, shortness of breath, severe headaches, obesity with a weight of approximately 260 pounds and height of 5'3", repeated falling associated with dizziness when performing any physical activity, inability to stand or sit for extended periods, and chronic fatigue. Tr. 437-451. Her application was denied initially, tr. 51-55, and upon reconsideration. Tr. 58-60. On July 29, 2004, after a hearing, the Administrative Law Judge (ALJ) ruled that Jenkins was not disabled because she could perform work that exists in significant numbers in the national economy, for example as an automatic photo developer, small products assembler, or charge account clerk. Tr. 21-22. The Appeals Council denied Jenkins' request for review, tr. 6-8, making the

ALJ's decision the final agency decision. See 20 C.F.R. §§ 404.981, 416.1481.

## STATEMENT OF THE FACTS

Jenkins was 46 years old at the time of the ALJ's decision. Tr. 437. She has a high school equivalent education and received a GED. Tr. 438. Jenkins performed past relevant work as an in-home care giver. Tr. 438. She alleges disability based on the following severe impairments: urinary incontinence, shortness of breath, severe headaches, obesity with a weight of some 260 pounds and height of 5'3", repeated falling associated with dizziness when performing any physical activity, inability to stand or sit for extended periods, and chronic fatigue. Tr. 437-451. The relevant medical evidence is discussed below.

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler,

3  - OPINION AND ORDER

807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude

4    - OPINION AND ORDER

substantial gainful activity."  Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can work, she is not disabled.  If she cannot perform past relevant work, the burden shifts to the Secretary.  In step five, the Secretary must establish that the claimant can perform other work.  Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

**ALJ'S FINDINGS**

Here, the ALJ found at step one that Jenkins had not engaged in substantial gainful activity since the alleged onset of disability. Tr. 18, 22, Finding 1.  This finding was made despite inconsistencies by Jenkins in the record.  On her application, Jenkins alleged that she was no longer working. Later, on her Reconsideration Disability Report and Work Activity Report, Jenkins made statements denying her ability to continue working.  Jenkins attempted to explain these contradictory

statements at the hearing by stating that her husband actually performed the housekeeping chores of her job. The ALJ was unconvinced by Jenkins explanation, but because her earnings were approximately $650.00 per month, which is below the substantial gainful activity (SGA) threshold, the ALJ found SGA was not present in this case. Tr. 18. This finding is not in dispute.

At step two, the ALJ found that Jenkins had the following severe impairments: obesity, mild reflux esophagitis, hiatal hernia, chronic obstructive pulmonary disease, and a history of polysubstance abuse with methamphetamine and cocaine. Tr. 18, 22, Finding 2. The ALJ also noted that Jenkins had an episode of chest pain in March 2004, "though electrocardiogram showed normal ST/T results, and the conclusion was that she had chest wall pain or chostochondritis." Tr. 18, 22, Finding 2. This finding is not in dispute.

At step three, the ALJ found that Jenkins' impairments did not meet or equal the requirements of a listed impairment. Tr. 18, 22, Finding 3. This finding is not in dispute.

The ALJ then determined that Jenkins had the residual functional capacity to perform a significant range of light work. Tr. 22, Finding 10. The ALJ found that Jenkins has the capacity to lift and carry 10 pounds frequently and 20 pounds occasionally; occasionally climb stairs and balance, but limited

from prolonged walking; and work in an environment free from dangerous hazards and fumes, with access to a bathroom and an opportunity to change positions. Tr. 21, 22, Finding 5. This finding is in dispute.

Jenkins alleges that the ALJ should have adopted the report of Doctors Jensen and Lahr, which would have imposed the additional limitations of no exposure to odors, dust, gases, poor ventilation, etc. Tr. 264.

At step four, the ALJ found that Jenkins was not able to perform her past relevant work. Tr. 21, 22, Finding 6. This finding is not in dispute.

At step five, the ALJ found that, based on the above residual functional capacity, Jenkins could perform work existing in significant numbers in the national economy, including automatic photo developer, small products assembler, and charge account clerk. Tr. 21, 22, Finding 11. This finding is in dispute.

Jenkins alleges the ALJ erred in the following ways: 1) improperly rejecting the opinion of the examining physician Dr. Lieuallen; 2) failing to consider the impact of her obesity on her ability to work; 3) accepting erroneous vocational testimony and failing to pose complete hypotheticals to the expert; and 4) failing to develop the record further.

**DISCUSSION**

1. The ALJ's Rejection of Dr. Lieuallen's Opinion

Jenkins argues that the ALJ's rejection of Dr. Lieuallen's opinion is improper because it is not supported by substantial evidence. The Commissioner argues that the ALJ properly evaluated the medical evidence and supported this evaluation with specific and legitimate reasons; and therefore, the ALJ's rejection of Dr. Lieuallen's opinion is proper.

Dr. Lieuallen examined Jenkins on behalf of Disability Determination Services, meeting with her in October 2001. Tr. 255-257. His diagnosis was morbid obesity with profound dyspnea and fatigue. Tr. 257.

The ALJ rejected Dr. Lieuallen's opinion due to 1) lack of medical evidence; 2) the claimant's unreliable presentation; and 3) Dr. Lieuallen is not a vocational expert, and his impression of Jenkins' employability is not a medical opinion. Tr. 20.

Dr. Lieuallen is an examining physician, not a treating physician. Because he only had an opportunity to examine Jenkins once, his opinion will be given weight to the extent that it is consistent with other evidence in the record. 20 C.F.R. § 416.927(d)(4). Dr. Lieuallen based his assessment on his medical examination of Jenkins, observation of Jenkins' ability to perform minor exercises, and Jenkins' subjective complaints. The ALJ noted that Dr. Lieuallen "assumed the presence of serious pulmonary impairment based on her presentation of labored

breathing." Tr. 20. It is unclear from Dr. Lieuallen's report whether he assumed or only suspected the presence of pulmonary impairment. Regardless, after further testing, in a report on November 28, 2001, Dr. Lieuallen amended his assessment to state, "the restrictions would be more related to lifestyle and deconditioning. The claimant would likely be employable in some capacity with volitional changes." Tr. 28. Thus the ALJ's rejection of Dr. Lieuallen's initial assessment based on a lack of medical evidence was proper because at the time, Dr. Lieuallen's assessment of pulmonary impairment was unsupported by any medical evidence, and because the doctor later retracted that assessment as evidenced by his report of November 28, 2001. Id.

In addition, Dr. Lieuallen's opinion was not consistent with the rest of the medical record. The Functional Capacity Report of Doctors Jensen and Lahr indicate that Jenkins was capable of employment, with the limitations listed above. Further, there is evidence in the record of other medical complaints made by Jenkins which, after testing, show no underlying medical basis for such impairments. For example, Jenkins alleged that she falls frequently, but as the ALJ noted, "no orthopedic or neurological pathology to account for [the falling] has been identified." Tr. 19.

The ALJ was also correct in noting that Dr. Lieuallen's statements that Jenkins "is clearly disabled" and that her

impairments "preclude any kind of meaningful work," tr. 257, are limited in probative value. Medical source opinions on issues reserved to the Commissioner are not medical opinions because the determination that a claimant is disabled or cannot work are administrative findings dispositive of a case. 20 C.F.R. § 416.927(e)(1). The ALJ will not give special significance to medical source opinions regarding the employability of a claimant. § 416.927(e)(3). Thus, the ALJ did not err in determining that Dr. Lieuallen's examining report was not dispositive.

2. The ALJ's Rejection of Jenkins' Credibility

"[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain or symptoms." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). In the absence of affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the symptom testimony must be clear and convincing. Id.

Here the ALJ's findings were clear and convincing as to why he rejected Jenkins' testimony. Th ALJ noted that Jenkins "has been described in the medical records as histrionic," tr. 20, referring to an emergency department record from July 20, 2001. During that visit Dr. Steven Blackthorne examined Jenkins who complained that she "felt like [her] insides were ripping apart"

10 - OPINION AND ORDER

and worried that her intestines were blocked. Tr. 195. Dr. Blackthorne noted, "[s]he is quite dramatic, and she might be a little distended, though it is difficult for someone who does not know he [sic] to say." Tr. 195. After noting that all bodily functions appeared normal, the doctor diagnosed Jenkins with constipation. Tr. 196. The ALJ also noted that Jenkins has alleged "myriad physical and mental complaints and undergone numerous evaluations and diagnostic tests, none of which revealed significant underlying pathology, other than obesity." Tr. 19.

The record suggests that Jenkins is malingering. At the administrative hearing, Jenkins testified that she gets dizzy and falls down "three, four, five times a day." Tr. 440. However neither her husband's testimony, nor that of her son, corroborate this claim. Claimant's husband testified that he had observed the claimant fall "three or four times probably" in a year's time. Tr. 452. Similarly, Jenkins' son, Mr. Ostled, testified that he had witnessed "about 10 over the last three years." Tr. 458. While there is ample evidence in the record that Jenkins does have difficulty standing or balancing for long periods of time, there is also evidence that Jenkins exaggerates her symptoms beyond what is objectively noticeable even from those closest to her.

The ALJ's finding, that Jenkins' testimony regarding her limitations was not credible based on claimant's malingering

nature and the pattern of alleged symptoms and undiscovered pathologies, is based on substantial evidence.

3.  The ALJ's Consideration of Plaintiff's Obesity

Jenkins next contends that the ALJ failed to consider her obesity in the analysis. According to the Social Security Rules, obesity, as other medical impairments, will be deemed a "severe" impairment, "when alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-01p (2002). The ALJ found that Jenkins' obesity was a severe impairment. Tr. 18. Jenkins asserts that the ALJ failed to consider the cumulative effects of obesity in combination with chronic obstructive pulmonary disease.

After weighing the evidence, the ALJ determined that Jenkins "is limited from lifting and carrying more than 10 pounds frequently with an occasional 20 pound maximum. She needs to avoid fumes and dangerous hazards. She requires access to a bathroom. She requires an opportunity to change position and is limited to occasional stair climbing and balancing. She is limited from prolonged walking." Tr. 21.

Based on the record, the ALJ adequately considered Jenkins' obesity in his determination. I find no evidence in the record of any further functional limitations as a result of her obesity that the ALJ failed to consider.

4. Erroneous Vocational Testimony

Jenkins asserts that the ALJ relied on erroneous vocational testimony in determining that Jenkins is capable of performing work available in the national economy. The vocational expert (VE) testified that a hypothetical person with Jenkins' limitations could perform work as a small products assembler, an automatic photo developer, or a charge account clerk. Tr. 461-462. Jenkins asserts that based on the "no hazards" limitation, neither the small products assembly, nor the photo developer position is appropriate because both involve the operation of tools and/or machinery.

At step five, the ALJ may call upon a VE to testify as to what jobs the claimant, given her residual functional capacity, would be able to perform, and the availability of those jobs. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ properly sought and relied on the testimony of the VE. The ALJ posed hypotheticals based on Jenkins' identified limitations, and accepted the VE's responses identifying jobs Jenkins could perform.[1]

The VE's knowledge of DOT job descriptions and the application of limitations to various jobs exceeds that of the

---

[1] Jenkins also asserts that these hypotheticals were inadequate because the ALJ's adopted limitations included only "fumes" and not "dust, gases, poor ventilation, etc." as the box checked by the examining doctors stated. Jenkins asserts that had the ALJ adopted these other limitations, the job of photo developer would not have been identified as appropriate. The other jobs identified by the vocational expert, however, do not contain any of these limitations, and therefore even if the ALJ should have included the further limitations indicated by the examining doctors in his hypothetical, it was harmless error.

13 - OPINION AND ORDER

court. This court does not wish to substitute its judgment, based on a limited understanding of the job assignment guidelines, for that of an expert in the field. The ALJ's reliance on the testimony of the vocational expert was proper, and this court will not second-guess that expert's opinion.

5. The ALJ's Development of the Record

Finally, Jenkins contends that the ALJ failed to properly develop the record. The Commissioner responds that the ALJ was under no duty to develop the record any further than he did because the record was adequate to allow for proper evaluation of the evidence. The ALJ has a duty to further develop the record where "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001). The claimant has the burden of proving that she is disabled. 42 U.S.C. § 423(d)(5). Thus, it is Jenkins' duty to bring forward all evidence that the ALJ can use to reach conclusions about her medical impairments. Jenkins asserts that the ALJ failed to address her obesity condition and did not accept the entire medical opinions of three DDS physicians. The ALJ did, however, address Jenkins' obesity and found it to be a severe impairment. Tr. 18, 22, Finding 2. Jenkins provides no evidence of impairment beyond those identified by the ALJ. The record contained evidence sufficient to allow proper examination of the

issues, and therefore, the ALJ was under no duty to further develop the record.

## CONCLUSION

The Commissioner's decision is based on substantial evidence, and is therefore affirmed. This case is dismissed. IT IS SO ORDERED.

Dated this __8__ day of February 2006.

                                        /s/ Ann Aiken
                                            Ann Aiken
                              United States District Judge